## JACKSON *against* PURDUE.

A Justice of the Peace, who has entered two judgments in the same suit, is not entitled to two *trial* fees, if on the first day of entering judgment the defendant was not present, and the plaintiff was willing to continue the case: the utmost limit to which his right could extend would be to demand compensation for investigating the plaintiff's claim and entering judgment by default, for which the fee bill allows but twelve and a half cents.

*Quere,* if a justice who enters a judgment by default which is opened for a rehearing and defence made, and a new judgment entered, is not entitled to two *judgment* fees.

Where a justice charges illegal fees which are endorsed on the execution and collected by the constable, the justice is liable for the penalty although they are not paid over to him.

The act of 28th March, 1814, notwithstanding it inflicts a penalty for taking illegal fees, is a *remedial* act, and as such should receive a liberal construction.

It is not necessary for the justice to make a regular tender of amends, if the other party, by his conduct, dispense with it, by a previous refusal to accept.

Writ of ERROR to the Common Pleas of *Centre* county.

This was an action of debt brought before a Justice of the Peace of *Centre* county, by *John Jackson* against *Edward Purdue*, Esq. a Justice of the same county, to recover the penalty of fifty dollars imposed by the act of 28th March, 1814, on any officer demanding or receiving illegal fees; and was removed by appeal into the Court of Common Pleas. On the trial in the court below, *James M'Manus* the attorney for the plaintiff, testified that on the 14th of February, 1831, he served a notice on *Edward Purdue* the defendant, setting forth the plaintiff's cause of action. That on the 25th of that month, the defendant, *Purdue*, called at *M'Manus's* office, who informed him, he had charged *James Jackson* too much costs by at least thirty-seven and a half cents, that *Purdue* then tendered thirty-seven and a half cents in silver which was refused by *M'Manus* as being insufficient amends.

*John Barr* sworn. This execution, *Tasker Knox*, v. *James Jackson*, I had in my hands and collected the money on it. I afterwards saw *Purdue* and wanted to return the execution and pay

Jackson *v.* Purdue.

his costs, and tendered to him all that was coming to him by the en-
dorsement on the execution. The twelve and a half cents for receiv-
ing the money, he would not have and said it was mine, but I refused
to take it. I told him I had collected it off *Jackson,* and unless he
would take it along with the rest, I would not pay him any of his costs.
I shewed him the fee bill, and tried to satisfy him I was not entitled
to that twelve and a half cents. He said, if the money had been
paid to him, the twelve and a half cents would be his, but as it was,
it was mine. I shewed him other executions but he could not be
convinced. I have seen *Purdue* write, and believe the execution
to be in his hand-writing, as are all the endorsements on it except
my costs. I have all the costs yet, as I would not give him a part,
unless he would take the whole. I was the constable of *Spring*
township.

The following bill of particulars of the costs on the execution
was read:

|  |  |
|---|---|
| *Tasker Knox*<br><br>v<br><br>*James Jackson.* | Summons, seventeen cents; constable twen-<br>ty-two, cents; *judgment,* twenty-five cents;<br>opening judgment for defendant, eight cents,<br>*judgment,* twenty-five cents; special bail,<br>eight cents; execution and return, twenty |

and a half cents; satisfaction, six and a half
cents; *paying over if paid to Justice,* twelve and a half cents;
twelve and a half cents Constable's costs, if not paid to Justice.

This was the entry on Justice *Purdue's* docket.

|  |  |
|---|---|
| *Tasker Knox*<br><br>v.<br><br>*James Jackson.* | Summons 20th day of May to appear<br>26th, served by copy on oath of Constable.<br>Plaintiff appeared, defendant's son appear-<br>ed, and alleged his father was not at home.<br>*After hearing judgment* for plaintiff. 12th |

June defendant appears, requests the judg-
ment opened for a rehearing; appeared Saturday the 19th, and *af-
ter hearing judgment* as before. July 5th, *P. Benson,* special
bail, 21st December execution.

The same costs taxed as in the bill of particulars, except the two
last items of the latter, which were not on the docket.

It was also shewn that on neither of the days of appearance be-
fore the justice, were any witnesses sworn or examined on either
side, nor were any books of accounts produced. That on the first
day, the defendant being absent, the plaintiff at the instance of the
defendant's son, consented to a continuance, which was disregard-
ed by the justice, who entered a judgment in favor of the plaintiff.
That on the second day the plaintiff exhibited a statement of his
claim that he had drawn up, which was disputed by the defendant;
that Justice *Purdue,* after looking at it, said he thought it all right.

On behalf of the defendant it was proved, that *Jackson* in com-

(Jackson *v.* Purdue.)

pany with *Barr*, the constable, called on Mr. *Petrikin* the Attorney of esquire *Purdue* who told *Jackson* that he was authorized to give whatever was right to compromise the matter. Jackson complained that twelve and a half cents too much, was charged on the execution. He was asked by Mr. *Petrikin* if half a dollar would satisfy him for this. *Jackson* replied he would have nothing to do with it. A dollar was next offered, which not being accepted, he was told by Mr. *Petriken* that he would give to him, *Jackson*, now, any thing that he would ask that was reasonable. The latter replied, that the matter was commenced and should go on. As he turned to go away, *Mr. Petrikin* said to him, perhaps the attorney's fees are necessary, I will give you that too.

The court below charged the jury

That in this case, if the defendant's own witness *Tasker Knox* is believed, and that he agreed to a continuance, he was not entitled to two trial fees. No witnesses were examined, no person sworn; there was no trial. He had no right to tax a trial fee for the first day, and the tax of twenty-five cents was illegal. The *charging* twelve and a half cents for receiving the money was illegal. That he has charged fees which were not authorized by the 26th section of the act of the 28th March 1814, is in the opinion of the court manifest.

The next inquiry is, is the offence complete before the Justice has received the costs? This brings us again to the consideration of the 26th section of the act of the 28th March, 1814.

1. If the officer shall take greater or other fees than is herein before expressed and limited for any service.

2d. Or if any officer shall charge or demand and take any of the fees herein before ascertained, where the business for which such fees are chargeable, shall not have been actually done and performed.

We hold in this case, that the words charge or demand and take, means charge and *take*, or demand and *take*, to bring the officer within this clause.

3 Or if any officer shall charge or demand any fee, for any service other than those expressly provided by this act, such officer, shall forfeit and pay to the party injured, fifty dollars.

The inquiry in this case.is were the fees taken?

The act is a penal one, and is to be construed strictly. The facts disclosed are to bring the defendant's case within the first provision of the act; and as we think, a payment to the constable is not a payment to the Justice, and a *taking* by him, it is the opinion of the court, the offence was not consummated until the fees were actually received by the Justice. The tender by the defendant was incomplete, and not in accordance with the law. An offer to do this

(Jackson *v.* Purdue.)

or that, is not a tender; it should be the producing and offering to pay a specific sum of money.

The plaintiff's counsel excepted to the charge, and assigned for error.

1 The court erred in instructing the jury, that a taking and receiving of fees by the Constable, was not a taking and receiving by the Justice.

2. The Court erred in instructing the Jury, that the offence was not consummated, when the Justice charged, demanded and issued his execution for the fees for services which had not been actually done and performed by him, viz: the six and a fourth cents for entering satisfaction, and the twelve and a half cents for receiving the money.

· 3. The Court erred in instructing the jury, that the offence was not consummated until the fees were actually taken by the justice, although they were actually taken and received by the constable from the plaintiff in error.

*Potter* for the plaintiff in error.

In this case the fees were taxed by the Justice, and endorsed according to law on the execution, and the same delivered to a constable, who collected the money; and although this was not paid over to the Justice, yet that fact is immaterial, the illegal fees having been extorted from the defendant, by the order of the Justice. The trial fee of twenty-five cents should not have been taxed by the Justice, no such service having been actually done and performed. *Act of* 28*th March,* 1214 *sec.* 26. *Purdon's Digest* 311. He cited 17 *Serg. & Rawle,* 75. *Coats & Wallace,* 5 *Serg. & Rawle,* 48. *Prior* v. *Craig, ibid.* 518. 13 *Serg. & Rawle,* 423. *Bates* v. *Shaw.* 12 *Serg. & Rawle,* 145, *Miller* v. *Smith.*

*Petriken* for the defendant in error.

The execution is not imperative, nor is a receipt of the money on it by the constable a receipt of illegal fees by the Justice, for the execution may be set aside on *certiorari,* on the ground of the illegality of the fees. A mere demand is not enough to constitute the offence, for the law says demand and *take.* The proof is, the Justice refused to receive the twelve and a half cents, so that as to that, he made no demand for it for himself. Nor had any of the fees, in the execution ever come to the Justice's hands. In usury or extortion there must be an actual taking, 5 *Bacon ab.* 412, *Old Ed. Title, Usury.* 1 *Dallas* 216. 10 *Mass.* 210. 17 *Mass.* 410. *Lincoln* v. *Shaw.*

The opinion of the court was delivered by

ROGERS, J.—The legislature have shewn great anxiety to restrain officers from charging or taking illegal fees, as appears in the twenty-sixth section of the act of 28th of March, 1814. There is another class of cases, to which the act applies. The Justice is prohibited from ta-

[Jackson *v.* Purdue.]

king greater or other fees than those expressed or limited in the act: from charging or demanding and taking any,fee, when the business for which the charge is made, has not been actually performed: and from charging or demanding a fee for services, unless the services are expressly provided for by the act.   If the plaintiff consents to a continuance, the justice is not entitled to two trial fees.   The utmost extent, to which his right would extend, would be to demand compensation for investigating plaintiff's claim, and entering judgment by default, but for this, the fee bill allows but twelve and a half cents.   Here the Justice has charged twenty-five cents.   If the act does not allow him to charge two judgment fees, the case comes within the third class; and then, 'charging the fee, without more, subjects the Justice to the penalty, because he would charge a fee for services, not provided for by the act.  I incline, however, to believe, that the Justice may charge, in some cases, two judgment fees; as suppose, a judgment by default, opened for a rehearing, and judgment again rendered, on trial, a defence having been made by defendant.  'This case comes within either the first or second class.  If the penalty has been incurred, it is because the Justice has charged and taken a fee, where the business for which the charge is made, has not been actually performed, or because he has taken a greater fee, than the fee bill allows.   And whether it falls within the first or second class, the question is the same.   It will be observed, that the charge was made by the Justice and endorsed on the execution; that the fee charged was collected by the constable but has not been paid over to the justice.   Is that a taking by the Justice? we think it is.     The object of the act was to shield debtors from oppression, and particularly to guard against compensatory fees to officers.   The penalty is given to the party injured, and whether the charge is made ignorantly, or oppressively and fraudulently, is immaterial.   The penalty is incurred by the fact of *taking*, in the two first classes, or by the act of *charging* the fee in the third.    I agree that to incur the penalty in the second class, the Justice must charge and take or demand and take a fee for services, for which he has a right to charge, but where the services have not been actually done or performed.    So that, whether the offence fall within the first or second class, the question turns upon the point, whether there has been a taking, within the meaning of the act. There is no doubt, the Justices made an illegal charge, and so the court instructed the jury; but it has been argued, and so the court ruled, that the offence is not consummated, because the constable, and not the Justice received the fees.   The act of Assembly, although it inflicts a penalty on the Justice, is a remedial act, and as such should receive such a construction as to carry into effect the intention of the Legislature, provided it may be done without doing violence to the words of the act.   The constable acted in obedience

(Jackson *v.* Purdue.)

to a warrant of the Justice, under process placed in his hands by the Justice. The injury is the same to the defendant, whether the Justice received the illegal fee or not. The debtor has been compelled to pay an illegal fee, by authority derived from the Justice, and is entitled to the penalty. The act not only operates as a punishment upon the Justice, but serves to remunerate the debtor for the wrong done, by the illegal seizure and sale of his goods. The constable is something more, as regards the collecting of the illegal fees than the agent of the Justice: he is the officer of the law, and as such, bound to obey its mandate, without a nice enquiry into the legality or illegality of his charges. And if he were the agent, merely acting under the command of his principal, it would be an illegal taking. The third section of the fee bill speaks of fees taken by the sheriff. It would be a narrow construction, to say, that illegal fees, levied upon a defendant by a sheriff, through his deputies, does not subject him to the penalty, although at the time of suit they may not have been actually paid over to the sheriff. I speak of those cases where the deputy acts in obedience to the commands of the sheriff. Unless we give the act this construction, it leaves the debtor, without any effectual remedy for an injury, which as it is against the laws, may be of the most oppressive kind. There would be danger of collusion between the Justice and the constable. It would in some cases, be difficult for the party agrieved to know when to bring suit. Success would depend upon his shewing that the money had been actually received by the Justice. If suit were delayed, arising from the uncertainty which would be produced by such a state of things, the Justice might protect himself by the act of limitations, and which, in favor of Justices, is but six months. As Justices may sometimes inadvertently commit errors, the law enables them to protect themselves by tender of amends, of the sufficiency of which the jury is to judge. If the testimony is worthy of credit, the Justice was anxious to make amends, but was prevented from doing so by the unreasonable conduct of the plaintiff. On a second trial, it may be worthy of enquiry, whether the plaintiff has not dispensed with the tender. It is very true, as was stated by the court of Common Pleas, that the mere offer to pay money, is not, in legal strictness, a tender. 2 *Dal.* 190. But if a man is bound to do a thing, he must either do it, or offer to do it; if no objections are made, he must shew that he made the tender in a regular manner; but this is not necessary, if the other party by his conduct dispense with a regular tender, by a previous refusal to accept it. 1 *Peter's R.* 24, *Blight* v. *Ashley et al.* Where the Justice shews himself willing to make amends, and makes a specific offer; the least the other can do is to make known his objection, if he have any, and to inform the Justice what compensation he expects. But if instead of doing this, he walks off, and declares he will have noth-

ing to do with it, that the law must take its course, it is difficult to imagine for what good purpose the law should exact, what under the cirumstances, would be useless, a final and regular tender.

Judgment reversed and a *venire de novo* awarded